**UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD**

SHERI SMITH,
            Appellant,

            v.

DEPARTMENT OF THE ARMY,
            Agency.

DOCKET NUMBER
DC-0752-16-0330-I-2

DATE: August 30, 2022

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Christopher D. Vaughn, Esquire, Decatur, Georgia, for the appellant.

Erika McPherson, Redstone Arsenal, Alabama, for the agency.

Kelly Lack, Rock Island, Illinois, for the agency.

Todd A. Messinger, Shaw Air Force Base, South Carolina, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**FINAL ORDER**

¶1        The agency has filed a petition for review, and the appellant has filed a cross petition for review of the initial decision, which sustained only some of the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

agency's charges and underlying specifications; found that the appellant failed to establish her affirmative defenses of race, sex, and age discrimination; found that the appellant proved her affirmative defense of whistleblower retaliation; and mitigated the removal penalty to a 45-day suspension. For the reasons discussed below, we DENY the agency's petition for review and GRANT the appellant's cross petition for review. Except as expressly MODIFIED by this Final Order to not sustain specification 4 of charge 6, find that—in light of our finding of whistleblower retaliation—no disciplinary action taken against the appellant can be sustained, and clarify the basis for finding that the agency did not prove by clear and convincing evidence that it would have removed the appellant absent her protected whistleblower disclosure and activity, we AFFIRM the initial decision. The removal is NOT SUSTAINED.

## BACKGROUND

¶2 The appellant was employed as a Lead Contract Specialist. *Smith v. Department of the Army*, MSPB Docket No. DC-0752-16-0330-I-1, Initial Appeal File (IAF), Tab 12 at 25. On November 19, 2015, the agency proposed the appellant's removal based on the following charges: (1) insubordination with two underlying specifications; (2) failure to observe written regulations, orders, rules, or procedures and failure to follow instructions with two underlying specifications; (3) submission of inaccurate information on a time card with five underlying specifications; (4) failure to follow established leave procedures with five underlying specifications; (5) misrepresentation for personal gain with two underlying specifications; and (6) conduct unbecoming a Federal employee with seven underlying specifications. *Id.* at 264-74. The appellant responded in writing and also provided a supplemental written response. *Id.* at 54-75, 77-95. The deciding official did not sustain specification 2 of charge 2, specification 4 of charge 3, or specifications 1 and 4 of charge 4. *Id.* at 31. However, he sustained

the remaining charges and specifications and imposed the removal, effective January 22, 2016. *Id.* at 31-34.

¶3    The appellant filed the instant appeal and requested a hearing. IAF, Tab 1. Upon the appellant's request, the appeal was dismissed without prejudice. IAF, Tab 25. After the appeal was refiled, the appellant requested a decision based on the written record, and the administrative judge granted her request. *Smith v. Department of the Army*, MSPB Docket No. DC-0752-16-0330-I-2, Appeal File (I-2 AF), Tabs 1, 6-7. The administrative judge issued an initial decision mitigating the appellant's removal to a 45-day suspension. I-2 AF, Tab 21, Initial Decision (I-2 ID). He found that the agency had not proven the following charges and specifications: (1) specification 1 of charge 1, insubordination; (2) specification 1 of charge 2, failure to observe written regulations, orders, rules, or procedures, failure to follow instructions, and thus the charge as a whole; (4) specifications 2-3, and 5 of charge 4, failure to follow established leave procedures, and thus the charge as a whole; (5) specifications 1-2 of charge 5, misrepresentation for personal gain, and thus the charge as a whole; and (6) specifications 3 and 7 of charge 6, conduct unbecoming a Federal employee. I-2 ID at 5-9, 12-20, 24-25, 28. He also found that the appellant failed to establish her affirmative defenses of race, sex, and age discrimination but that she established her affirmative defense of retaliation for her protected whistleblower disclosure activity. I-2 ID at 30-38. Nevertheless, he mitigated the penalty to a 45-day suspension. I-2 ID at 29-30.

¶4    The agency has filed a petition for review, the appellant has filed a cross petition for review and response, and the agency has filed a response to the appellant's cross petition for review. Petition for Review (PFR) File, Tabs 1, 4, 8.[2]

---

[2] The appellant has filed an additional pleading, which the Acting Clerk of the Board rejected, in which she attempted to respond to the agency's April 3, 2017 pleading. PFR File, Tabs 9-10. The agency has filed a petition for review, the appellant has filed

**DISCUSSION OF ARGUMENTS ON REVIEW**

We modify the initial decision to the extent that it sustained specification 4 of charge 6 but otherwise affirm the decision to sustain only certain charges and underlying specifications.

¶5    The agency asserts that the administrative judge should have sustained charge 1, specification 1, insubordination. PFR File, Tab 1 at 20-27. In this specification, the agency asserted that, on October 22, 2015, the appellant would not relocate her office from the second floor to the first floor at the direction of her "supervisory chain." IAF, Tab 12 at 264. As the administrative judge stated, insubordination is the willful and intentional refusal to obey an authorized order of a superior officer that the officer is entitled to have obeyed. I-2 ID at 5; *see Parbs v. U.S. Postal Service*, 107 M.S.P.R. 559, ¶ 13 (2007), *aff'd*, 301 F. App'x 923 (Fed. Cir. 2008). When the agency's evidence is equally worthy of belief as that of the appellant's regarding any charge or specification, the agency has failed to meet its burden. *Cook v. Department of the Army*, 105 M.S.P.R. 178, ¶ 19 (2007).

¶6    We have considered the agency's arguments, including that the appellant was originally directed to move her office, the statements that the agency submitted that she may not have moved her office on the specified date, and the agency's attempts to impeach the appellant and her first-level supervisor. PFR File, Tab 1 at 20-27. We note, however, that the language of the specification specifically mentions the appellant's "supervisory chain," which includes her first-level supervisor, who stated that the appellant followed her instructions to relocate to the first floor. I-2 AF, Tab 11 at 65-66. Because there is a dispute as to whether the appellant was actually insubordinate and failed to follow the

---

a cross petition for review/response to the petition for review, and the agency has filed a response to the cross petition for review. PFR File, Tabs 1, 4, 8. The Board's regulations do not provide for additional pleadings other than these, and thus, the Acting Clerk of the Board properly rejected the appellant's pleading. 5 C.F.R. § 1201.114.

instructions of her supervisors, we agree with the administrative judge that the agency has not proven this charge by preponderant evidence.

¶7    The agency next asserts that the administrative judge should have sustained charge 2, specification 1, failure to follow instructions, which asserted that the appellant failed to accept one of the designated offices on the first floor. PFR File, Tab 1 at 27-28. Similar to the previous charge, the appellant's first-level supervisor disputed whether the appellant failed to follow her instructions and was actually insubordinate. I-2 AF, Tab 11 at 65-66. Accordingly, as with the prior charge, we agree that the agency failed to prove the charge by preponderant evidence.

¶8    The agency challenges the administrative judge's failure to sustain the three remaining specifications of charge 4,[3] failure to follow established leave procedures by failing to properly request leave and failing to submit the proper leave forms. PFR File, Tab 1 at 28-29. In charge 4, the agency asserted that the appellant failed to follow agency policy to properly request leave via its time and attendance system, thus failing to complete a Form 71 ("Request for Leave or Approved Absences"), which would have been generated by the system. IAF, Tab 12 at 265-66. An agency may not discipline an employee for failure to follow leave procedures unless she is clearly on notice of the applicable requirements and that discipline for continued noncompliance is likely. *Allen v. U.S. Postal Service*, 88 M.S.P.R. 491, ¶ 10 (2001). Pursuant to the agency's standard operating procedures, an employee who is requesting unplanned sick leave must do so by notifying her supervisor. IAF, Tab 12 at 450-51. The policy states that the employee should complete Form 71 "upon return to work." *Id.* The agency's 2015 memorandum regarding the usage of the agency's time and attendance program states that, when an employee is sick, she is responsible for requesting leave from her supervisor. *Id.* at 443. The appellant's first-level

---

[3] As previously noted, the deciding official did not sustain two of the five specifications underlying charge 4.

supervisor stated that she gave the appellant permission for her absence during the relevant time period. I-2 AF, Tab 11 at 67-68. The agency policy indicated that this was all that the appellant was required to do on the dates when she was sick. Accordingly, we agree with the administrative judge that this charge cannot be sustained because the appellant was not on notice that she could be disciplined after having received leave approval from her first-level supervisor.

¶9 The agency also asserts that it proved charge 5, specification 1, misrepresentation for personal gain. PFR File, Tab 1 at 29-30. In this specification, the agency asserted that the appellant misrepresented to her supervisor that the Workers' Compensation Specialist told her she could claim regular duty hours for her absence on September 28, 2015, due to an injury during work hours despite the fact that she had never been provided this guidance. IAF, Tab 12 at 266, 368. To prove a charge of falsification, the agency must prove, by preponderant evidence that, inter alia, the employee intended to defraud the agency for her own private material gain. *Boo v. Department of Homeland Security*, 122 M.S.P.R. 100, ¶ 12 (2014).

¶10 We agree with the agency that the appellant knew that she was incorrectly recording her time because the Workers' Compensation Specialist credibly stated that she told the appellant that, before claiming leave due to a work-related injury, she was required to file a workers' compensation claim for her injury. IAF, Tab 12 at 349. The appellant did not file a claim for her injury until October 15, 2015. *Id.* at 363-65. However, we find the appellant was credible when she stated that the claim was eventually approved for her ankle injury and the agency has not provided evidence to dispute this. I-2 AF, Tab 11 at 53. Thus, although the appellant may have known that she was improperly recording her time, it is possible that this constituted a mere failure to follow agency procedures as opposed to an attempt to acquire payment to which she was not entitled and eventually received. Accordingly, we agree with the administrative judge that the agency failed to prove this specification. *See Raco v. Social Security*

*Administration*, [117 M.S.P.R. 1](#), ¶ 7 (2011) (stating that, although the agency asserted that the appellant falsified her time when she departed prior to her recorded sign-out time, it did not prove the necessary intent for a falsification charge and, regardless, it had only charged her with conduct unbecoming a Federal employee).

¶11        Next, the agency alleges that the administrative judge should have sustained specification 2 of the misrepresentation charge.  PFR File, Tab 1 at 30-31.  This charge stated, "[i]n an official e-mail to [the Workers' Compensation Specialist] regarding your Workers' Compensation claim, you misrepresented your condition and the circumstances surrounding your arrival to work on September 28, 2015."  IAF, Tab 12 at 266.  The appellant sent an email to the Workers' Compensation Specialist in which she stated that she had to wait in a vehicle for over an hour in 100-degree weather and that, by the time she received help, she was ill.  *Id.* at 353.  The appellant's first-level supervisor's statement was consistent with the appellant's statement in the email and indicated that the air conditioning in the agency car in which the appellant had been sitting was not working, as was common with many agency cars.  I-2 AF, Tab 11 at 69.  The Logistics Management Specialist's statement reflects that the appellant exaggerated the amount of time she had to wait and that the air conditioning was working in her vehicle upon his arrival.  IAF, Tab 12 at 411.  The administrative judge found that the agency did not prove this specification because he credited the statements of the appellant's first-level supervisor and the appellant as to the events detailed in the email and thus found that the agency did not prove its charge by preponderant evidence.  I-2 ID at 20.

¶12        On review, the agency asserts that the administrative judge should have made credibility determinations as to why he believed the version of events presented by the appellant and her first-level supervisor over that of the Workers' Compensation Specialist and the Logistics Management Specialist.  PFR File, Tab 1 at 30-31.  However, the Workers' Compensation Specialist did not witness

the relevant events on September 28, 2015, and thus was not in the best position to determine whether the appellant was misrepresenting the facts in her email. Further, the evidence is inconclusive regarding which version of events to believe. Accordingly, we find that the agency's argument does not provide a basis for disturbing the administrative judge's finding that the agency failed to meet its burden by preponderant evidence.

¶13 The agency also challenges the administrative judge's failure to sustain specification 3 of charge 6, conduct unbecoming a Federal employee, asserting that the appellant sent an email knowing that the allegations contained therein were false. PFR File, Tab 1 at 31-32. In this specification, the agency asserted that the appellant sent a derogatory email that was "an emotional attempt" to suggest that senior leaders of her organization were mistreating her. IAF, Tab 12 at 267-68. The administrative judge found, among other things, that the agency failed to prove that this email was "an emotional attempt" by the appellant, and we find no reason to disturb this finding. I-2 ID at 24-25.

¶14 The agency also argues that the administrative judge should have sustained charge 6, specification 7, which is based upon the appellant's emails to the Secretary of the Department of Veterans Affairs (VA) regarding her second-level supervisor. PFR File, Tab 1 at 12-16; IAF, Tab 12 at 269. As discussed below, we agree with the administrative judge that this specification is grounded in the appellant's protected disclosure. I-2 ID at 28. Accordingly, it cannot be sustained. *See Chambers v. Department of the Interior*, 602 F.3d 1370, 1380 (Fed. Cir. 2010).[4]

¶15 The appellant challenges the administrative judge's decision to sustain charge 1, specification 2, insubordination, which is based upon her failure to attend a meeting with her second-level supervisor. PFR File, Tab 4 at 11; IAF,

---

[4] *Chambers* was decided prior to the enactment of the Whistleblower Protection Enhancement of Act 2012, Pub. L. No. 112-199, 126 Stat. 1465. However, subsequent changes in the law do not affect the relevant holding.

Tab 12 at 264. She asserts that she did not refuse to attend but instead requested that another individual be present with her during the meeting because of her discomfort. PFR File, Tab 4 at 11. The appellant emailed her second-level supervisor, stating that she would not meet with him unless another individual was present. IAF, Tab 12 at 397. We find that this constituted her refusal to attend the meeting and her mere assertion that she was uncomfortable did not excuse her refusal. Thus, we affirm the administrative judge's finding sustaining this specification.

¶16    The appellant also argues that the administrative judge improperly sustained charge 3—submitting inaccurate information on her time and attendance records—because her first-level supervisor allowed her to vary her schedule in certain respects. PFR File, Tab 4 at 11-13; IAF, Tab 265. As the administrative judge stated, regardless of the appellant's first-level supervisor's permission, the appellant's time and attendance records did not reflect the hours that she had worked. I-2 ID at 10-12. Accordingly, we affirm the administrative judge's finding sustaining this charge.

¶17    The appellant next asserts that the administrative judge improperly sustained charge 6, specifications 1-2 and 4-6 of the conduct unbecoming charge. PFR File, Tab 1 at 14-16. In specification 1, the agency asserted that the appellant did not provide accurate information to her healthcare provider to obtain a Non-Availability statement to return home. IAF, Tab 12 at 267. The appellant sent an email to a major from the medical clinic requesting a Non-Availability Letter because her "agency is sending [her] home," but her second-level supervisor stated that, at no point did he state that he was sending her home. *Id.* at 267, 287, 292. The appellant generally asserts that she was not seeking the document, as implied by the specification. PFR File, Tab 4 at 14. However, we find this argument is not reflected in the record and does not provide a basis for disturbing the initial decision.

¶18    Specifications 2, 5, and 6 each describe portions of emails that the appellant sent to agency officials that the agency asserts are unbecoming in that they were somehow untruthful, inaccurate, disruptive, or offensive. IAF, Tab 12 at 267-69. The administrative judge sustained these specifications as unbecoming, and, based upon our review of the text of the emails, we agree with the administrative judge's well-reasoned analysis and findings. I-2 ID at 23-28; IAF, Tab 12 at 268, 328-29, 425-26.

¶19    Regarding specification 4, we agree with the appellant that this charge cannot be sustained. PFR File, Tab 4 at 15. In this specification, the agency asserted that the appellant provided inaccurate statements in an email that were disruptive to the agency and its mission and offensive to her second-level supervisor. IAF, Tab 12 at 268. Specifically, the agency asserted that, in an email to a commanding general dated November 5, 2015, the appellant alleged that her second-level supervisor was causing issues with her and her first-level supervisor, manipulating doctors to understate her medical condition, violating her Health Insurance Portability and Accountability Act of 1996 (HIPAA) rights, making slanderous remarks about her, and deliberately delaying her trip home. *Id.* The agency stated that the appellant's HIPAA and Privacy Act rights were not violated because the information requested, obtained, and shared with those with a "need to know" pertained to an injury for which she had filed a workers' compensation claim. *Id.*

¶20    We modify the initial decision and find that this specification cannot be sustained because it is based in part upon a protected disclosure to a commanding general. As discussed below, we find that the appellant reasonably believed that the agency was violating her HIPAA and Privacy Act rights. Here, the specification specifically charges the appellant with disclosing what she believed was a HIPAA and the Privacy Act violation. Accordingly, we do not sustain the specification. *Chambers*, 602 F.3d at 1380. Based on the above, we find that the agency has proven only charges 1, 3, and 6.

<u>The appellant proved her affirmative defense of retaliation for her protected whistleblower disclosure and activity, and thus the removal action must be canceled.</u>

¶21 In a removal appeal, an appellant's claim of whistleblower reprisal is treated as an affirmative defense. *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 12 (2015); *see* 5 U.S.C. § 1221(e)(1). In such an appeal, once the agency proves its initial case by a preponderance of the evidence, the appellant must show by a preponderance of the evidence that she made a protected whistleblower disclosure under 5 U.S.C. § 2302(b)(8) or participated in protected whistleblower activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and that the disclosure or activity was a contributing factor in the agency's personnel action. 5 U.S.C. § 1221(e)(1); *Ayers*, 123 M.S.P.R. 11, ¶ 12; *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 12 (2015). If the appellant establishes a prima facie case of whistleblower reprisal, then the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken the same personnel action absent any protected whistleblower disclosures or activity. 5 U.S.C. § 1221(e)(2); *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999); *Alarid*, 122 M.S.P.R. 600, ¶ 14.

> *The appellant's whistleblower disclosure and activity were a contributing factor to the agency's decision to remove her.*

¶22 Here, the appellant asserted that she made two protected whistleblower disclosures in the form of two emails to the Secretary of the VA and participated in protected activity by disclosing information to the Inspector General. IAF, Tab 10 at 5-10. Her disclosures and activity involved information about her second-level supervisor, who had accepted a position at the VA. On October 23, 2015, the appellant sent the first email anonymously and asserted that her second-level supervisor was telling people that he was selected for his position because he knew someone "on the inside," that he had a history of discriminating against women and African Americans, and that he had previous and pending equal employment opportunity (EEO) complaints filed against him. *Id.* at 6-7.

The email was forwarded to the Executive Director of Office of Acquisition Operations at the VA, who contacted the appellant's second-level supervisor. I-2 AF, Tab 10 at 94. She determined that she would still proceed with selecting the appellant's second-level supervisor for the position at the VA. *Id.*

¶23    The appellant sent a second email to the Secretary of the VA on November 6, 2015, in which she asserted that she believed that her second-level supervisor was violating her Privacy Act and HIPAA rights and that she both reported his actions to the Inspector General[5] and decided to file an EEO complaint regarding the matter. IAF, Tab 10 at 9. The Executive Director's office received a copy of this email on November 9, 2015. I-2 AF, Tab 10 at 94. This email included the appellant's name and an unredacted copy of the prior email. *Id.*

¶24    The appellant filed an Inspector General complaint in which she stated that an agency employee and her second-level supervisor violated the Privacy Act and HIPAA rights by contacting the agency medical clinic to obtain medical information about her without her authorization and then misused and inappropriately distributed this information. IAF, Tab 12 at 280. She also stated that these individuals attempted to manipulate her doctors and understated her medical condition such that she would not be approved for emergency travel. *Id.* Additionally, she asserted that her second-level supervisor and others had not properly accommodated her ankle injury, tried to force her to work in a storage room, and threatened to discipline her when she refused to work in the storage room. *Id.*

---

[5] The administrative judge stated that the appellant filed a complaint with the VA Inspector General. I-2 ID at 37. However, the appellant stated in her email that she reported her second-level supervisor's actions to "our" Inspector General's office. IAF, Tab 10 at 9. Further, the "Inspector General Action Request" is on the agency's form, and, in her response to the proposal notice, the appellant stated that she filed an Inspector General complaint consistent with the agency's regulations. IAF, Tab 12 at 64, 280.

¶25     It is undisputed that the appellant filed an Inspector General complaint and thus engaged in protected activity under 5 U.S.C. § 2302(b)(9)(C).[6] We also find that the appellant made a protected whistleblower disclosure.  A protected whistleblower disclosure is a disclosure of information that the appellant reasonably believes evidences any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  *Bradley v. Department of Homeland Security*, 123 M.S.P.R. 547, ¶ 7 (2016).  The test to determine if a putative whistleblower has a reasonable belief in the disclosure is an objective one:  whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidenced a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  *Id.*  While motive may be relevant to determining a reasonable belief, a disclosure is not excluded from protection based on an appellant's motive in making it.  *Ayers*, 123 M.S.P.R. 11, ¶¶ 20-21.

¶26     In the appellant's second email, she stated that her second-level supervisor was violating her HIPAA and Privacy Act rights.  IAF, Tab 10 at 9.  On October 21, 2015, the following email exchange occurred between the appellant and a major from the medical clinic.  IAF, Tab 12 at 332-35.  The appellant notified him that she did not authorize anyone, other than her first-level

---

[6] During the pendency of this appeal, the National Defense Authorization Act for Fiscal Year 2018 (NDAA), Pub. L. No. 115-91, 131 Stat. 1283, was signed into law on December 12, 2017.  The NDAA expanded the activities protected under 5 U.S.C. § 2302(b)(9)(C) to include cooperating or disclosing information to "any . . . component responsible for internal investigations or review."  Pub. L. No. 115-91, § 1097(c)(1)(A), 131 Stat. at 1618.  That expansion does not affect the outcome of this appeal because all of the relevant events occurred prior to December 12, 2017.  *See Edwards v. Department of Labor*, 2022 MSPB 9, ¶¶ 29-33 (finding that the changes to section 2302(b)(9)(C) do not apply retroactively).

supervisor, to obtain her medical records, and he responded that her personal health information could not be released without her written authorization or a court order. *Id.* at 334-35. She responded by asking why her second-level supervisor was able to obtain her medical profile and medical limitations in an email without her authorization. *Id.* at 334. The major responded that profiles are viewable by the Commander for those within his unit and if requested by "the provider" and that physical limitations due to injury are reportable by agency regulations. *Id.* at 333. The appellant disputed this, stating that, pursuant to agency regulations, only civilian supervisors should have access to her medical profile and that, because her second-level supervisor was not a civilian, he should not have had the ability to access her profile. *Id.* The agency asserted that the appellant's rights were not violated because the agency could release her information to those individuals who had a "need to know," such as when the information related to a workers' compensation claim, her medical status within and fitness to remain in theater operations, and travel home. *Id.* at 269.

¶27    We find that it was reasonable for the appellant not to take the agency officials at their word in this situation and that she reasonably could have concluded that her second-level supervisor improperly obtained her medical information without her consent. *See Hupka v. Department of Defense*, 74 M.S.P.R. 406, 410 (1997) (finding that the appellant reasonably believed that the agency violated the Privacy Act when it disclosed information about his illness and injuries to the Department of Health & Human Services without his permission). We have considered the appellant's potential motive for making the disclosure, including animus for her second-level supervisor with whom she did not get along, but we still find that her belief regarding her rights was reasonable

in the situation.  Thus, we conclude that the appellant reasonably believed that she was disclosing a violation of her rights under HIPAA and the Privacy Act.[7]

¶28        Next, we find that, because specification 7 of charge 6 is actually grounded in the protected whistleblower disclosure and activity, the proposing official and deciding official had constructive knowledge of them.[8]  IAF, Tab 12 at 269; *see Parikh v. Department of Veterans Affairs*, 116 M.S.P.R. 197, ¶ 35 (2011) (finding that the appellant's disclosures were a contributing factor to his removal when the proposing and deciding officials testified that they took the action, in part, because of the appellant's disclosure, which were identified in the notice of proposed removal).  Accordingly, we find that the appellant's disclosure and activity were a contributing factor to the appellant's removal.  *Id.*

> *The agency did not prove by clear and convincing evidence that it would have removed the appellant absent her protected disclosure and activity.*

¶29        In determining whether the agency has shown by clear and convincing evidence that it would have taken the same personnel action absent the appellant's protected disclosure and activity, the Board generally will consider the following factors:  (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency's officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who did not make protected disclosures or engage in protected activity but who are otherwise similarly

---

[7] Because we find that the appellant engaged in protected whistleblower activity under 5 U.S.C. § 2302(b)(9)(C) and made a protected whistleblower disclosure in the second email that were contributing factors to her removal, we need not address whether her disclosure in the first email was a contributing factor in her removal.

[8] The appellant also has established the contributing factor element on the basis of the constructive knowledge of the proposing and deciding officials.  *See Nasuti v. Department of State*, 120 M.S.P.R. 588, ¶ 7 (2014).  Her second-level supervisor and the Program Specialist knew about her protected whistleblower disclosure and activity and influenced the proposal after their knowledge by providing information that served as the basis for the charges and for crafting the charges.  IAF, Tab 12 at 287-88, 345-47; I-2 AF, Tab 10 at 12-13, 25, 92-95.

situated. *See Carr*, 185 F.3d at 1323; *Elder v. Department of the Air Force*, 124 M.S.P.R. 12, ¶ 42 (2016). The Board must consider all pertinent record evidence in making this determination. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012); *Elder*, 124 M.S.P.R. 12, ¶ 42. The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather weighs these factors together to determine whether the evidence is clear and convincing as a whole. *Alarid*, 122 M.S.P.R. 600, ¶ 14.

¶30    Regarding the first *Carr* factor, we find that the agency had strong reasons for removing the appellant but that these reasons are diminished by the number of charges that were not sustained. The sustained charges and specifications are quite serious. They include insubordination by failing to attend a meeting as directed, inaccurately completing time and attendance records, providing misleading information in an effort to get a healthcare provider to obligate the Government to pay for her travel expenses home, and sending emails with inaccurate and deceitful statements that were disruptive to the agency. The agency has submitted numerous emails, records, and statements from multiple agency officials in support of these charges. However, the large number of charges and specifications that were not sustained demonstrates overreach by the agency, which diminishes the otherwise strong evidence that the agency has presented. *See Ayers*, 123 M.S.P.R. 11, ¶ 28. Additionally, that the conduct unbecoming charge was based upon two specifications grounded in protected disclosures further detracts from the strength of the agency's evidence. *See Chambers*, 602 F.3d at 1380.

¶31    Next, we conclude that the agency had a strong motive to retaliate against the appellant. In particular, the appellant's second-level supervisor had a strong motive to retaliate. The proposal notice expressly states that the appellant's disclosure was "offensive" to him and that the appellant acted in a "deliberate manner" to interfere with his employment. IAF, Tab 12 at 269. In her

declaration, the Executive Director stated that the appellant's allegations unnecessarily delayed his appointment and "raised concern and generated substantial interest within the highest levels of our [a]gency." I-2 AF, Tab 10 at 94-95. The appellant's second-level supervisor also stated that her actions were disruptive to him and to his family. *Id.* at 24-25. In addition, although the content of the appellant's disclosures ultimately may not have cast the agency or its officials in a negative light because the appellant's actions affected another agency, both the deciding and the proposing officials had a possible motive to demonstrate to the other agency that they were properly disciplining the appellant for her actions. *See Ayers*, 123 M.S.P.R. 11, ¶ 29 (finding that agency officials had a possible motive to retaliate when the appellant's disclosures reflected on their capacity as managers and employees).

¶32    Last, we find that the third *Carr* factor is not particularly significant in this case. Our reviewing court has held that, although an agency does not have an affirmative burden to produce evidence concerning each and every *Carr* factor, "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis," but that the failure to produce such evidence if it exists "may be at the agency's peril," and "may well cause the agency to fail to prove its case overall." *Whitmore*, 680 F.3d at 1374-75. Here, the agency did not produce evidence regarding similarly situated individuals who did not make whistleblower disclosures or engage in protected activity. The Program Specialist stated that she conducted a broad search for cases similar to the appellant's but could not find any. I-2 AF, Tab 10 at 17. The appellant has submitted an extensive list of employees and the penalties that were imposed on them for the single charges of insubordination, attendance-related offenses, false statements, and failure to follow instructions, respectively. I-2 AF, Tab 16. We have reviewed this list, but because the appellant did not identify which employees were whistleblowers, we are unable to determine if this evidence supports a finding that the agency took similar actions against employees who are

similarly situated but not whistleblowers. Thus, we give very little weight to this evidence. We therefore find that *Carr* factor 3 cannot weigh in favor of the agency. *See Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 18 (citing *Smith v. General Services Administration*, 930 F.3d 1359, 1367 (Fed. Cir. 2019); *Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018)).

¶33      Based on the above, we find that the agency has failed to prove by clear and convincing evidence that it would have removed the appellant absent her protected whistleblower disclosure and activity. We find that the agency's motive to retaliate is strong. We accord great weight to the agency's specific mention of the appellant's disclosures in the proposal notice and that the agency specifically described the motive that resulted on the basis of the appellant's disclosures. We also find that the agency's failure to prove all of its charges is, under the circumstances, a sign of overreach. Accordingly, we conclude that the agency failed to prove by clear and convincing evidence that it would have sustained the appellant's removal absent her protected disclosure and activity, and we affirm the administrative judge's finding in this regard.

¶34      Because the appellant proved her claim of whistleblower reprisal, the removal penalty must be reversed.[9] *See Ayers*, 123 M.S.P.R. 11, ¶ 30.

---

[9] On review, the agency has submitted evidence that it asserts is material to the issue of whether it has proven, by clear and convincing evidence, that it would have taken the same action absent the appellant's whistleblower disclosures and activity. PFR File, Tab 1 at 17 n.4, Tab 8 at 5-10. This evidence includes the Program Specialist's declaration, dated January 28, 2017, discussing knowledge and motive from the time of the appellant's removal, emails from October and November 2015, another copy of the appellant's complaints to the VA, November 2015 personnel documents regarding the appellant's first-level supervisor, and May 2015 information regarding the appellant's prior misconduct. PFR File, Tab 1 at 36-38, 40-42, 43-46, 48-51, 53-57, 58-63. We have not considered this evidence because it is either not new or the information contained in the documents is not new. *Grassell v. Department of Transportation*, 40 M.S.P.R. 554, 564 (1989); *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980). Additionally, the evidence that the agency has submitted attempting to impeach the appellant's first-level supervisor's credibility is not new because evidence offered on review merely to impeach a witness's credibility generally is not considered new and material. *Bucci v. Department of Education*, 42 M.S.P.R. 47, 55 (1989).

**ORDER**

¶35    We ORDER the agency to cancel the appellant's removal and to restore her effective January 22, 2016.  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶36    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶37    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶38    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶39    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision

are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING**
**YOUR RIGHT TO REQUEST**
**ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

**NOTICE TO THE APPELLANT REGARDING YOUR RIGHT**
**TO REQUEST CONSEQUENTIAL AND/OR**
**COMPENSATORY DAMAGES**

You may be entitled to be paid by the agency for your consequential damages, including medical costs incurred, travel expenses, and any other reasonable and foreseeable consequential damages. To be paid, you must meet the requirements set out at 5 U.S.C. §§ 1214(g) or 1221(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202 and 1201.204.

In addition, the Whistleblower Protection Enhancement Act of 2012 authorized the award of compensatory damages, including interest, reasonable expert witness fees, and costs. 5 U.S.C. § 1214(g)(2).

If you believe you meet these requirements, you must file a motion for consequential damages and/or compensatory damages WITHIN 60 CALENDAR

DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision in your appeal.

## NOTICE TO THE PARTIES

A copy of the decision will be referred to the Special Counsel "to investigate and take appropriate action under [5 U.S.C.] section 1215," based on the determination that "there is reason to believe that a current employee may have committed a prohibited personnel practice" under 5 U.S.C. § 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D). 5 U.S.C. § 1221(f)(3). Please note that while any Special Counsel investigation related to this decision is pending, "no disciplinary action shall be taken against any employee for any alleged prohibited activity under investigation or for any related activity without the approval of the Special Counsel." 5 U.S.C. § 1214(f).

## NOTICE OF APPEAL RIGHTS[10]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file

---

[10] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[11]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[11]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:           /s/ for
                         _____
                         Jennifer Everling
                         Acting Clerk of the Board
Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1.      Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2.      The following information must be included on AD-343 for Restoration:

    a.      Employee name and social security number.
    b.      Detailed explanation of request.
    c.      Valid agency accounting.
    d.      Authorized signature (Table 63).
    e.      If interest is to be included.
    f.      Check mailing address.
    g.      Indicate if case is prior to conversion.  Computations must be attached.
    h.      Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.      Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.      Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.      Outside earnings documentation statement from agency.
4.      If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.      Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6.      If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.      If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.      Must provide same data as in 2, a-g above.
    b.      Prior to conversion computation must be provided.
    c.      Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.